Mr. Heath. Good morning and may it please the court. My name is Jesse Heath and this is my colleague Peter Andres and we are a pro bono counsel for petitioner in the action Mr. Dario Suarez-Valenzuela. We reserve five minutes for rebuttal at which time my colleague will address any issues raised by respondent and any questions the court has. Mr. Suarez applied for and the immigration judge granted withholding of removal under the Convention Against Torture based on a finding that Mr. Suarez would more likely than not be tortured with the acquiescence of officials in Peru. But the BIA vacated that decision and was wrong for two main reasons. It applied an impermissibly high standard of acquiescence, the willful acceptance standard. Did it, I mean, do we have to, would we have to, suppose we review it under an acquiescence standard, does that I think if you look at the standard applied by the BIA, they applied a willful acceptance standard and not a willful blindness standard and willful blindness. They didn't apply either. I'm sorry? They didn't apply either. They just announced a standard and if I were to agree with you that's the wrong standard, they didn't apply that. There was no willful blindness implicated in its decision. Acceptance, willful acceptance. Willful acceptance or acceptance or willful blindness, either one. To the contrary, it found that the government, when it knew about it, prosecuted the officers and imprisoned Officer Lewis. Indeed, I mean, it did find that some government officials. But it didn't apply the wrong standard. It announced the wrong standards the most I think you can get out of that. I think if you look at the standard that they applied, it would be the willful acceptance standard. Well, I mean, that was kind of my question as well. It just wasn't clear to me that that's the case because they do talk about the fact that Lewis was prosecuted. So there wasn't, it doesn't appear to me that what was applied was a willful acceptance standard. There's no evidence either to suggest it. In other words, the whole ruling was based on the notion that this was a rogue officer and was not, the relationship didn't call upon a determination that the government was accepting this. Well, there's two sides. I think as far as willful acceptance goes, their ruling depended on the fact that you cannot find acquiescence where the government does not have reasonable control over a group or an individual. That's a different issue, isn't it? It's part of the willful. Willful acceptance is a notion that they know what's going on and turn their heads or don't or actually accept the notion, which is a different one from willful blindness. But that type of issue was not presented factually in this case and was not resolved. I think it was because they found that the officers with Lewis and Lewis himself were rogue officers and that's private individuals and therefore the government shouldn't have an obligation or doesn't have the ability to control private individuals. No, it's not. They didn't reach that conclusion. They basically said it wasn't the government position and they pointed to several facts as to why it wasn't the government position. The main one, of course, is the government prosecuted, but is also the background, the woman, I forgot her name, that runs the prohibition program. Laura Bozzo. It's one fact that they found. It's one fact that should go into the acquiescence determination, but it's not dispositive about whether they prosecuted him. Also, when he came out of prison, was he still an officer? There's no evidence of that in the record and they didn't resolve that. In other words, it would have needed to resolve that probably, too. But I don't think that an acquiescence determination would turn on the fact of whether he continued to be an officer. It would be something to take into consideration, but it would not be even an issue in the decision that they reached, the way they reached it. They announced a paragraph, they had a paragraph there in the very last case in that paragraph, listed this case with this standard, and basically they were giving background information. Now, you may be right that that's a wrong standard and maybe we should point that out, but the question is does that change what they decided? I don't see how it does. I hear what you're saying, but I don't think they reached that point. They didn't find it necessary to reach that point because they decided he was a rogue cop and they made that determination because the government did not accept or did not turn its head blindly. That was the conclusion they concluded. So you didn't have to resolve that issue whether it was willful blindness or willful acceptance. They just didn't accept it at all because they prosecuted him. Right, but I don't, I still don't think that that demonstrates that the government of Peru is not willfully blind or not willfully accepting of the issue. What we're doing is reviewing the BIA. For example, is there any, what about Mr. Suarez Valenzuela's ability to relocate within Peru? Well, that's, that was a factual finding of the IJ, which the BIA accepted the IJ's factual findings and then at the end of the case just decided that they were wrong. So there are a lot of issues where they disregarded the immigration judge's factual findings, including the likelihood that he'd be tortured with acquiescence in the future. But the issue underlying the ability to relocate, as I And what the BIA said was that there was simply no evidence in the record that the national database had been used in the way that was suggested. Right, I mean it's a new database, so it would be difficult. Right, so there's no, right, so there's no, it was the lack of evidence regarding the use of the database. There's no reason or let me put it this way, did Mr. Suarez Valenzuela bring forward evidence that that the database has been used to track people down to torture them? He demonstrated that it could be used, right, and the IJ found that it could be used to track him down. But not that it has been used. It was possible to use it, if people wanted to. Right, and under the regulations it's just one of many things that we can consider in determining whether futures torture is likely to occur. Exactly, and that was my point actually. There were a number of factors that the BIA looked at in reaching its conclusion, none of which appeared to me, at least in application, to have been the willful acceptance standard. I think it's citation to INRI SV and it's the proposition that it used from INRI SV is concede for a moment because that you're correct in that, that they cited that it's the wrong standard and they invoked the wrong standard in citing it. But then they go on and the facts that they found would not have benefited you if they applied willful blindness. In other words, there's no suggestion that you have to show that you lost under willful acceptance and you would have won under willful blindness. And I think we make this argument in section 3. Except they didn't even get to that issue. To the contrary, what they said is that you can't even impute this to the government because they had a changeover, that these were rogue cops and they laid out all those facts. The whole next paragraph does not suggest, if the willful blindness were the statute applied, that there would have been any different sentence. Not a single sentence there. I just looked at it and would have been different. Right. And that's kind of, they disregarded key findings of the IJ without any sort of explanation. So they cherry pick some and say they're... For example? For example, they say that the anti-corruption efforts of the Peruvian government should outweigh the lack of progress in rooting out police brutality in the police force. Whereas one is clearly more relevant to the case than the other. Well, I'm sorry, you said that they disregarded findings without any explanation. Factual findings. And I was asking for an example of that. Well, for example, the database. They just said, we are not convinced that it'll be used this way. Well, there was no evidence that it was. But it was the IJ's factual finding to which they're supposed to defer. No, it wasn't a factual, the factual finding was that it could be used. There was no factual finding that it was so used. In fact, there was no evidence that it was so used. Right. So there was no factual finding. It didn't, the BIA didn't find that the database couldn't be used. They found correctly that there was no evidence that it had been used. So they didn't, that was not a factual finding that they disregarded. Well, I guess I would rephrase it. The IJ's factual finding is that Mr. Suarez could not relocate and they found that he... But the underpinning for that was, was, as I recall, and correct me if I'm wrong, but I thought the basis for that was it's finding with respect to the database, because otherwise there would be no reason that you would have to have that as the predicate for the finding that he couldn't relocate. Right. But I mean, I think he probably took into consideration multiple factors, including that he's friends with current police officers. But the database was another factor that he took into consideration when making the observation. They also said that even if it were, that there's no evidence that they would have used that and provided the information to Lewis, because Lewis, they found, was a rogue cop and there was no evidence to suggest that he had an official position even after his incarceration. They made all those observations. They made the observation. They didn't explain their reasoning in determining that he was a rogue cop or that the officers that were accompanying him were rogue officers. And I think in Tassie and elsewhere, the BIA does not explain its reasoning for coming to a decision. It should be remanded. Okay. Is that Albert? Um, I would just point out also that the third circuit cases cited by the government are not on point. I mean, they're saying that, uh, the BIA cited Henry SB for this proposition, which is acceptable under willful blindness standard, and they cite Silver and Gifo. But, um, in that case, they said that inquiry into governmental acquiescence does not turn on a government's ability to control the individuals engaging in a torturous activity. I think that's kind of my point here, is that the BIA assumed that if the government of Peru cannot control Lewis, then there can't be a finding of acquiescence. They prosecuted him. But they prosecuted him for a separate crime, and he was out within three months rather than the 15-year sentence. Well, that's another issue whether he was out, but he was convicted of murder, prosecuted and convicted of murder, and there's no evidence that he remained a cop afterwards. Right. But he has harassed Mr. Suarez's family with other police officers present. I understand. But that's a that's consistent with being a rogue cop. Your friends go along with you. Well, I mean, I think what their purpose you have to look under de la Rosa, sort of the, um, Ramirez-Pero, the standard for determining whether an official acts in an official capacity. It looked the nexus between their position and their torturous activities. Here, they're wearing badges. They have firearms. Their job is to prevent exactly what Lewis is continuing to do, which is attempting to find and kill Mr. Suarez, and they're not doing it. So they're aware of torturous activity before it occurs, and thereafter breach their legal obligation to prevent it. And I think that, again, the BIA's error was in not explaining how it concluded that they were rogue officers, which, as this court noted in Zelaya and Tassi, demands a remand to the BIA for an explanation of its reasoning. Any further questions? That's fine. Thank you. Mr. Julius. May it please the court, Derek Julius, on behalf of Respondent, the United States Attorney General. Respondent respectfully asked the court to deny this petition for review because substantial evidence supports the denial of Petitioner's Convention Against Torture Claim. Mr. Julius, did Mr. Suarez Valenzuela, um, challenge the finding that he could not          I don't think so. I don't think so. I don't think so. I don't think so. I don't think so. No, he did not. That was, there was no discussion in their opening brief as to the agency's treatment of the, the database. Um, so our, our primary argument is that his way, yes. Um, and that was one of the four factors that the agency does have to consider in, in deciding whether a petitioner has met his or her burden of proving eligibility for cat protection. Um, as your honors have noted, uh, the record is undisputed that Luis is really the only person, uh, that the petitioner seems to fear. And as the record demonstrates, the Peruvian officials have prosecuted, convicted and incarcerated him when it was brought to their attention that he was acting, acting violently. Uh, it's also uncontested that petitioner failed to demonstrate post murder conviction that Luis remains employed as a Peruvian police official. Uh, it's also uncontested that the Peruvian government has implemented reforms, uh, after Mr. Suarez Valenzuela departure from Peru in 1999. Essentially the crux of their argument because they're only, he's only afraid of, of Luis is that the current Peruvian government will acquiesce in any harm that Luis imposes, uh, on the petitioner. They've simply failed to show that this is the case. Uh, again, I invoke the, the, the record evidence regarding changed country conditions as to the prosecution, uh, of Luis, the, the held in accountable of prior, uh, regimes, authorities who were in charge in 1998. When could you speak to, um, the BIA's invocation of the willful acceptance standard? Yes. I think, I think your honor's hit on a good point. They may have articulated, um, uh, a questionable standard. I don't believe that this court has any binding law anymore that the willful acceptance standard is not appropriate. Uh, Lopez Soto was the court's discussion on that, which was vacated when the parties took that up on bonk. Um, and subsequent to that, this court has always discussed it in terms of willful blindness. Uh, as we explained in our brief, I think, you know, the citation to matter of SV and the parenthetical discussion of the willful acceptance standards is largely irrelevant to this analysis. As your honors pointed out, I don't think as on, as applied, uh, analysis of the board's decision, they applied a willful acceptance standard. The words willful acceptance don't appear anywhere else in the decision. Uh, and largely they decided as a matter of law that the facts as presented simply did not show that Suarez Valenzuela had met his burden of proving that it was more likely than not, uh, proving officials would acquiesce in Luis's, uh, behavior. Um, so given the facts of this case and that the board found as a matter of law, uh, whenever the Peruvian government was made aware of Luis's, uh, behavior, they took action. There's no evidence on this record that current Peruvian officials acting in their official capacity would acquiesce in any harm by Luis. He's been back in Peru for about a year now. Yes. I believe he was removed in January of 2012. Okay. Thank you. Thank you very much. Your honors. Mr. Thank you, your honors. Um, there are two points that I would just like to clarify. I mean, according to, um, the regulations, the, there are the four main factors that the, uh, uh, BIA was able to consider and, uh, or I guess the IJ originally, um, and this one factor about the database is not dispositive. Um, and I think according to the, um, uh, 1208 16, uh, C two, um, that this decision of the IJ could have been based on, um, the testimony of Mr. Suarez Valenzuela alone, um, that, um, if it's credible, it can sustain, uh, the burden of proof, uh, without any cooperation as well. Um, I'd also, uh, add, I would point, uh, your honors to, um, the country conditions, um, the, uh, country conditions are, uh, actually I think very on point for this type of abuse. Um, there are discussions about the, um, police misconduct, which is exactly at issue here. Um, the anti-corruption reforms, um, are actually not really the type of thing that, uh, um, is, is that issue here? Anti-corruption is a separate issue from, uh, torture. And so we would just, uh, ask that you, um, consider that and, um, this analysis as well, and, uh, there are no further questions. Um, we would request that this court remain for proceedings at the BIA to apply the correct legal standard and a reason explanation of its decision. Thank you, Mr. Andrews. Thank you. We'll adjourn court for the day and come down and Greek council. This honorable court stands adjourned until tomorrow morning at 9 30. God save the United States in this honorable court.
judges: Paul V. Niemeyer, Allyson K. Duncan, Henry F. Floyd